# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE: CAPRIATI CONSTRUCTION CORP, INC., | Case No. 2:16-cv-01560-APG |
| Debtor. | **OPINION** |
| SEQUOIA ELECTRIC UNDERGROUND, LLC, | |
| Appellant, | |
| v. | |
| CAPRIATI CONSTRUCTION CORP, INC., *et al.*, | |
| Appellants. | |

Sequoia Electric Underground, LLC appeals from the bankruptcy court's order granting a stipulation entered into among debtor Capriati Construction Corp, Inc.; the Nevada Department of Taxation (NVTax); and the Nevada Department of Transportation (NDOT). ECF No. 1.  That stipulation resolved (1) proofs of claim NVTax and NDOT filed against Capriati's estate and (2) the distribution of funds NDOT owed to Capriati under a construction contract.  In a nutshell, Sequoia contends the stipulation improperly distributes funds that do not belong to Capriati's estate because Capriati breached the underlying contract and thus no longer was entitled to the funds in NDOT's possession.

Capriati responds that Sequoia did not object to the stipulation before the bankruptcy court and thus Sequoia cannot raise this issue for the first time on appeal.  Capriati also contends the bankruptcy court's order was not final and appealable.  Finally, Capriati, NVTax, and NDOT respond that under Nevada law Capriati had an interest in the funds; thus, the funds properly were treated as property of the estate that must be returned to Capriati.

/ / / /

1    Sequoia did not raise any of its arguments before the bankruptcy court.  A party cannot

2    raise issues for the first time on appeal absent various exceptions.  None of those exceptions

3    applies in this case.  I therefore dismiss this appeal, without prejudice to Sequoia attempting to

4    obtain relief before the bankruptcy court.

5    **I. BACKGROUND**

6    Capriati was a general contractor on the US 95 highway project under contract 3409 with

7    NDOT (Project 3409). ECF No. 16 at 8-9.  Sequoia was a subcontractor to Capriati on Project

8    3409. ECF No. 9 at 40-61.  Capriati obtained performance and payment bonds for the project

9    from Fidelity and Deposit Company of Maryland. *Id.* at 11-18; ECF No. 16 at 10-17; *see also*

10   Nev. Rev. Stat. § 408.357 (requiring bidders on highway projects to furnish performance and

11   payment bonds).[1]

12   On March 12, 2014, NDOT advised Capriati that NDOT had inspected Capriati's work on

13   Project 3409 and "all items have been found to be satisfactorily completed in accordance with the

14   Construction Plans, Specifications and Special Provisions." ECF No. 14 at 4.  NDOT further

15   stated that the "contract was completed December 1, 2012, and is hereby accepted by the Nevada

16   Department of Transportation, as of March 7, 2014." *Id.*  As required by Nevada law, NDOT

17   published a notice to creditors in the newspaper "[p]ursuant to NRS 408.387" advising them that

18   the project was completed and any claims on the contract must be submitted to NDOT within 30

19   days. ECF No. 16 at 32-33; *see also* Nev. Rev. Stat. § 408.363(1) (requiring persons furnishing

20   materials or labor to the general contractor to make a claim on the contractor's bond within 30

21   days from the date NDOT finally accepts the contract); *id.* § 408.387 (requiring NDOT to publish

22   a notice of the date of final acceptance).

23   Capriati did not pay Sequoia amounts due for Sequoia's work on Project 3409, so Sequoia

24   sued in Nevada state court. ECF No. 9 at 62; *see also* Nev. Rev. Stat. § 408.363(2) (providing that

25   persons furnishing materials or labor to contractor may file suit against the surety six months after

26

27   _____

[1] Sequoia apparently disputes which chapter of the Nevada Revised Statutes applies.  For purposes of providing a factual context to the dispute, I cite to Chapter 408.

28

they file a claim with NDOT). That litigation resulted in two partial summary judgments holding

that Capriati breached the subcontract and owed Sequoia $349,125.08 and $253,655.29,

respectively. ECF No. 9 at 62-81. Sequoia contends it is still due funds, including attorney's fees

and amounts due under Change Order 15, which involved the resetting of high mast poles. ECF

No. 16 at 22-30.

Capriati filed for chapter 11 bankruptcy protection but did not identify Sequoia or the state

court litigation in its schedules. ECF Nos. 6 at 46-54; 7 at 4-80, 85-86. Fidelity filed a proof of a

secured claim based on payments it made on the payment bond, including the second Sequoia

partial summary judgment award. ECF No. 9 at 4-18, 27 (identifying $972,411.88 in losses

related to "US 95"), and 31 (identifying $270,804.51 for Sequoia and $7,946.07 in related

interest). Sequoia filed a proof of claim in the amount of $392,575.98. *Id.* at 34-39.

NVTax filed proof of claim 19 in the amount of $47,854.85. ECF Nos. 8 at 31; 16 at 34-

35. NDOT filed several separate proofs of claim. NDOT filed claim 44 for $5,500 for taxes or

penalties owed based on a final decision by the Nevada State Labor Commissioner. ECF No. 16

at 36-52. NDOT indicated this claim was subject to a right of setoff based on "[r]etainage under

NDOT Contract No. 3409." *Id.* at 37. NDOT also filed claims 73 through 78 for back wages and

related penalties. *Id.* at 54-130. Like claim 44, each of these claims stated that they may be

subject to setoff by "retainage" under the Project 3409 contract. *Id.* at 55, 66, 77, 94, 111, 122.

The "retainage" arises from Nevada law, which requires NDOT to make progress

payments for no more than ninety-five percent of the entire contract price. Nev. Rev. Stat.

§ 408.383(1). "The remaining 5 percent, but not more than $50,000, must be retained until the

entire contract is completed satisfactorily and accepted by the Director." *Id.*

On June 10, 2016, Capriati entered into a stipulation with NDOT and NVTax to accept

unpaid funds NDOT owed to Capriati on Project 3409, including the $50,000 retainage, and apply

them to claims 19, 44, and 73 through 78. ECF Nos. 6 at 25; 8 at 92-95. That stipulation states

that "NDOT currently holds a retention under Contract No. 3409 in the sum of $50,000.00 and

the sum of $182,746.30 for quantities not yet paid to date under Contract No. 3409 for a total

amount retained of $232,746.30." ECF No. 8 at 92.  The stipulation provides that the funds will be applied as follows: (1) $15,777.46 of the retention fund to be held in trust by NDOT pending a final decision by the Labor Commissioner; (2) $36,014.18 of the retention fund to be held by NDOT to be paid to NVTax on its priority claim upon plan confirmation, with NVTax's unsecured claim to be treated under the plan; (3) $5,500 of the retention fund to be paid to NDOT upon plan confirmation; and (4) all remaining amounts remitted to Capriati upon confirmation. *Id.* at 94-95.  The bankruptcy court approved the stipulation four days later. ECF Nos. 6 at 25-26; 8 at 97-98.

Sequoia did not object to the stipulation, but now appeals the bankruptcy court's approval of it.  Sequoia argues that the amounts in the retention fund and the remaining $182,746.30 were not property of the estate, and thus the parties could not stipulate to the distribution of those funds through Capriati's bankruptcy proceeding.  Sequoia contends Capriati had no interest in those funds because it had breached the general contract by not paying its subcontractors.  Sequoia thus reasons that NDOT had no obligation to pay Capriati those funds, so the funds never became estate property.  Rather, Sequoia argues, because Fidelity paid out on its payment bond, Fidelity was entitled to the funds remaining on the Project 3409 contract.  Alternatively, Sequoia argues that because the remaining unpaid funds represent Sequoia's work on Change Order 15, the funds belong to Sequoia.  Sequoia also objects to the balance of any remaining funds being distributed to Capriati without any protection of the surety, Fidelity.

Capriati responds that Sequoia's appeal is barred because it failed to object to the stipulation.  Capriati also contends that the bankruptcy court's order granting the stipulation is an interlocutory order for which Sequoia did not obtain leave to appeal.  On the merits, Capriati argues that NDOT has never found Capriati in breach of the contract and Sequoia has no standing to assert a breach of a contract to which it is not a party.  Capriati also argues that under Nevada law, a subcontractor on a highway project does not have an equitable lien on monies held by NDOT.  Rather, Capriati contends, the subcontractor's only remedy is to make a claim on the

payment bond.  Finally, Capriati claims that Sequoia's appeal is frivolous and therefore the court should award Capriati its fees and costs for having to respond.

NVTax and NDOT separately respond that under Nevada law and the applicable contract, the balance owed on the contract and the retention must be released to the contractor, not to subcontractors or the contractor's surety.  They thus contend that Capriati had at least an equitable interest in the funds at the time it filed for bankruptcy, so the funds are property of the estate.  NVTax and NDOT also contend Sequoia lacks standing to argue that Fidelity ought to have an equitable lien on the retainage and unpaid contract amounts.

Sequoia replies that requiring it to object to a proposed stipulation within four days (but only two business days) is unreasonable, and therefore its appeal should not be dismissed on the basis that it failed to object below.  Sequoia also contends that the order is not interlocutory because it finally determines Capriati's right to the retention fund and the unpaid balance on the contract.  On the merits, Sequoia argues that because Capriati breached the general contract by failing to pay its subcontractors, Fidelity had to step in and pay and, as a result, Capriati no longer has a claim to the funds.  Instead, Sequoia argues, the bankruptcy court should have ordered those funds be paid to Fidelity or placed into escrow.  Sequoia also contends that the bankruptcy court lacked the factual detail that is being provided here, and thus it had no evidentiary basis to make its ruling.

## II. ANALYSIS

"As a general rule, issues 'not presented to the trial court cannot generally be raised for the first time on appeal.'" *In re Enewally*, 368 F.3d 1165, 1173 (9th Cir. 2004) (quoting *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991)).  This rule applies to situations where a party fails to raise issues before the bankruptcy court. *Id.*  There are several exceptions to this general rule: "(1) there are exceptional circumstances, (2) the new issue arises while the appeal is pending because of a change in the law, . . . (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue below," and (4) "the trial court's decision was plain error and injustice would otherwise result." *Id.*

1    Here, the bankruptcy court granted the stipulation within four days of the parties

2    submitting it.  Sequoia did not object before the court granted the stipulation, but that is hardly

3    surprising given how quickly the court acted.  However, Sequoia thereafter did not file with the

4    bankruptcy court a motion for reconsideration or some other relief advising that Sequoia objected

5    to the stipulation and the grounds for its objection.  Instead, Sequoia filed this appeal.  Because

6    Sequoia did not first raise these issues before the bankruptcy court, it cannot do so for the first

7    time in this appeal.

8        No exception warrants departure from the general rule that issues cannot be raised for the

9    first time on appeal.  Sequoia argues there are exceptional circumstances because there was

10   insufficient time to respond to the stipulation before it was approved.  But nothing prevented

11   Sequoia from filing a motion with the bankruptcy court after the stipulation was granted.

12       The issues on appeal are not purely questions of law—the surrounding factual context is

13   both disputed and not fully developed.  Indeed, Sequoia admits in its reply brief that "[c]ontrary

14   to NDOT and NVTAX's claims, this matter is far from fully briefed to the Court" and that many

15   pertinent facts were never provided to the bankruptcy court. ECF No. 23 at 12.  Nor has Sequoia

16   shown that the opposing parties will suffer no prejudice by its failure to first present these issues

17   to the bankruptcy court, which could consider the parties' arguments on a full factual record and

18   in the context of the overall bankruptcy proceeding.

19       Finally, the parties' appellate briefs do not show plain error.  Nor does Sequoia show an

20   injustice because it could and should have first raised these issues before the bankruptcy court.

21       I dismiss Sequoia's appeal because it raises numerous issues that were never presented to

22   the bankruptcy court.  I do so without prejudice to Sequoia attempting to obtain relief in the

23   bankruptcy court.  I deny Capriati's request for attorney's fees and costs because there was no

24   request by separate motion. Fed. R. Bankr. P. 8020(a) ("If the district court or BAP determines

25   that an appeal is frivolous, it may, after a separately filed motion or notice from the court and

26   reasonable opportunity to respond, award just damages and single or double costs to the

27   appellee."); *In re Kyle*, 317 B.R. 390, 395 (B.A.P. 9th Cir. 2004) ("To the extent Federal Rule of

28

Bankruptcy Procedure 8020 applies, the requests are rejected as not being in 'a separately filed motion' as required by that rule.").

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that appellant Sequoia Electric Underground, LLC's appeal is DISMISSED without prejudice to Sequoia attempting to obtain relief before the bankruptcy court.  The clerk of court is instructed to close this case.

DATED this 31st day of March, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE